USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/19/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
HARBANS KAUR,                    :
                                 :
                Plaintiff,       :
                                 :
        -against-                :
                                 :
NEW YORK CITY HEALTH AND         :
HOSPITALS CORPORATION            :
(A.K.A. HARLEM HOSPITAL)         :
                                 :
                Defendants.      :
------------------------------X

07 Civ. 6175 (LAP)

MEMORANDUM AND ORDER

Loretta A. Preska, Chief United States District Judge:

Plaintiff Harbans Kaur ("Plaintiff") brings this
action claiming that, inter alia, New York City Health &
Hospitals Corporation ("Defendant") subjected her to a
hostile work environment during her employment and
wrongfully terminated her on the basis of her national
origin and in retaliation for asserting her rights under
anti-discrimination laws.  Plaintiff asserts claims under
Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§
2000e et seq. ("Title VII"), the New York State Human
Rights Law, New York State Executive Law § 296 ("NYSHRL"),
and New York City Administrative Code §§ 8-101 et seq.
("HRLNYC").  For the reasons set forth below, Defendant's
motion for summary judgment is granted, and Plaintiff's
complaint is dismissed in its entirety.

I.    Initial Evidentiary Objections

In Plaintiff's statement of material facts, submitted
in accordance with Local Civil Rule 56.1 ("Pl. 56.1
Stmt."), she has expressed disagreement with Defendant's
version of the facts and has challenged the admission of
various documents relating to Plaintiff's employment
submitted by Defendant in support of its motion for summary
judgment.  "Upon any motion for summary judgment . . .
there shall be annexed to the notice of motion a . . .
statement . . . of the material facts as to which the
moving party contends there is no genuine issue to be
tried." Local Civil Rule 56.1(a).[1]  The facts set forth in
the statement "will be deemed to be admitted for purposes
of the motion unless specifically controverted . . . in the
statement required to be served by the opposing party."
Local Civil Rule 56.1(c).  Each statement by either party,
"including each statement controverting any statement of
material fact,  must be followed by citation to evidence
which would be admissible, set forth as required by Federal
Rule of Civil Procedure 56(e)." Local Civil Rule 56.1(d).
"[W]here there are no[] citations or where the cited

---

[1] "The purpose of Local Rule 56.1 is to streamline the
consideration of summary judgment motions by freeing
district courts from the need to hunt through voluminous
records without guidance from the parties." Holtz v.
Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir. 2001).

materials do not support the factual assertions in the

Statements, the Court is free to disregard the assertion."

Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir.

2001) (internal quotation marks omitted) (second alteration

in original); see also, e.g., American Nat. Fire Ins. Co.

v. Mirasco, Inc., 265 F. Supp. 2d 240, 246 (S.D.N.Y. 2003)

(holding that any 56.1 statements that opposing party

denied but failed to support with specific evidence, were

admitted for purposes of the summary judgment motion);

Blackmon v. UNITEA, No. 03 Civ.9214 GWG, 2005 WL 2038482,

at *2 (S.D.N.Y. Aug. 25, 2005) (holding that party's

assertion that she "does not agree" with certain 56.1

statements was insufficient to prevent admission of the

statements); Chimarev v. TD Waterhouse Investor Servs.,

Inc., 280 F. Supp. 2d 208, 223 (S.D.N.Y. 2003); U.S.

Information Systems, Inc. v. Int'l Bhd. of Elec. Workers

Local Union No. 3, No. 00 Civ. 4763 RMB JCF, 2006 WL

2136249, at *3 (S.D.N.Y. Aug. 1, 2006).

Insofar as Plaintiff controverts Defendant's 56.1

Statement or exhibits by citing to material in the record,

those facts will be deemed contested for purposes of this

motion.  However, Plaintiff also challenges various

exhibits submitted with defense counsel's affidavit,

(Declaration of Camille D. Barnett ("Barnett Decl.")), on

3

evidentiary grounds.  These exhibits consist of a variety
of documents produced by Defendant over the course of
Plaintiff's employment.  Plaintiff's typical response to
Defendant's citation of a personnel document in the 56.1
statement reads as follows: "The document is not evidence
under Rule 56(e), as it has not been properly
authenticated.  Furthermore, were the Court to accept the
document as a business record, the content of the document
is not evidence under Rule 56(e), as it is inadmissible
hearsay, or hearsay within hearsay." (Pl. 56.1 Stmt. ¶ 16.)

    In regard to Plaintiff's hearsay objection, the
personnel documents, including the performance reviews,
complaints, and the accompanying hand-written notes, are
not hearsay because they are not being offered to prove the
truth of what they assert. Fed. R. Evid. 801(c) ("'Hearsay'
is a statement, other than one made by the declarant while
testifying at the trial or hearing, offered in evidence to
prove the truth of the matter asserted."). Rather, the
documents are being offered to show the state of mind of
Defendant's representatives in making various employment
decisions with regard to Plaintiff; the truth of the
assertions in the documents is irrelevant. See McPherson v.
New York City Dep't of Educ. 457 F.3d 211, 216 (2d Cir.
2006) ("[Plaintiff] is attacking the reliability of the

evidence supporting [Defendant's] conclusions. In a discrimination case, however, we are decidedly not interested in the truth of the allegations against [P]laintiff. We are interested in what motivated the employer . . . .") (internal quotation marks omitted); see also, e.g., Duviella v. JetBlue Airways Corp., No. 04-CV-5063(NGG)(LB), 2008 WL 1995449, at *5 (E.D.N.Y. May 06, 2008) ("In a discrimination case, the truth of allegations made by an employer against a plaintiff is immaterial, for the ultimate issue is what motivated the employer."); Ancheril v. Connecticut, No. 3:06-cv-1019(JCH), 2008 WL 2324130, at *3 (D. Conn. June 02, 2008) (holding that personnel documents were being offered to show state of mind of supervisors in making employment decision and, therefore, were not hearsay.).

        Plaintiff's authenticity objection poses a more difficult question. Rule 56(e) of the Federal Rules of Civil Procedure states that affidavits filed in connection with a summary judgment motion "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e)). "To the extent that an affidavit or declaration contains material that does not

comply with Rule 56(e), the Court may strike those portions, or may simply disregard them." Rus, Inc. v. Bay Indus., Inc., 322 F. Supp. 2d 302, 307 (S.D.N.Y. 2003).

Defendant has failed to support any of the offered records with a proper affidavit. The affidavit of defense counsel, who lacks personal knowledge as to the creation or maintenance of Defendant's records, is insufficient to certify their authenticity. See Fed. R. Evid. 902(11). Defendant has failed to submit an affidavit of the custodian of these records or an affidavit of any other "qualified person" to authenticate the records. Id.

In order to satisfy the requirement of authentication, parties must provide "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). "The requirement under Rule 901 is satisfied 'if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification.'" United States v. Dhinsa, 243 F.3d 635, 658 (2d Cir. 2001) (quoting United States v. Ruggiero, 928 F.2d 1289, 1303 (2d Cir. 1991)); see also United States v. Pluta, 176 F.3d 43, 49 (2d Cir. 1999) (noting Rule 901 "does not require the proponent of the evidence to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the

evidence is what it purports to be.  Rather, the standard .
. . is one of reasonable likelihood.") (internal quotation
marks omitted); United States v. Al-Moayad, 545 F.3d 139,
172 (2d Cir. 2008) ("We have commented that the bar for
authentication of evidence is not particularly high, and
proof of authentication may be direct or circumstantial.")
(internal quotation marks and citation omitted).  The Court
is granted "broad discretion in determining whether an item
of evidence has been properly authenticated." Dhinsa, 243
F.3d at 658.

A finding of authenticity "may be based entirely on
circumstantial evidence," United States v. Bagaric, 706
F.2d 42, 67 (2d Cir. 1983), including "[a]ppearance,
contents, substance, internal patterns, or other
distinctive characteristics, taken in conjunction with
circumstances," Fed. R. Evid. 901(b)(4). See also John Paul
Mitchell Sys. v. Quality King Distrib., Inc., 106 F.
Supp.2d 462, 472 (S.D.N.Y. 2000) ("Testimony is not the
sine qua non of authentication; circumstantial evidence may
serve to demonstrate a document's authenticity.").

The only question, then, is whether the documents
offered by Defendant, and the circumstances surrounding
their production, indicate that the documents are authentic

7

and reliable.  The Court concludes that the circumstantial evidence supports such a conclusion of authenticity here.

First, the documents are all produced on Defendant's letterhead.  They also are signed by various supervisors and, in many cases, by Plaintiff herself.  Witnesses have testified to the existence of a performance review policy in which evaluations were produced and reviewed by supervisors. (See Deposition of June Bobcombe ("Bobcombe Dep.") 25:4-16.)  There is no indication that any of the documents were produced in contemplation of this, or any other, litigation.  Second, many of the documents have been identified by Plaintiff in her deposition testimony.  The documents identified by Plaintiff are identiical in form and appearance to others that she claims to lack knowledge of.  Third, Plaintiff has offered performance evaluations of her own that are identical in form to those offered by Defendant.  Lastly, and most importantly, Plaintiff has relied on these documents in making various accusations in this case and cannot, therefore, also challenge their authenticity. See Atkinson v. Fishcher, No. 9:07-cv-00368(GLS/GHL), 2009 WL 3165544, at *3 n.1 (N.D.N.Y. Sep. 25, 2009).  Plaintiff alleges that she was given negative performance evaluations by supervisors due to discriminatory animus, that patients were encouraged to

8

file false complaints against her, and that her timesheets were falsified in an attempt to create a pretext to terminate her. (Declaration of Harbans Kaur ("Kaur Decl.") ¶ 9.) The basis of these accusations, therefore, is the existence of such evaluations and complaints. It appears from Plaintiff's 56.1 Statement and deposition testimony that her primary contention in regard to these documents is that they do not accurately reflect her work performance, not that they were not actually produced by Defendant throughout the course of her employment. As discussed above, however, these documents are not being offered for the truth of what they assert.

Therefore, this Court finds that there is sufficient circumstantial evidence to authenticate the documents, and they will be considered in this motion.

II.  Background[2]

A.  Plaintiff's Employment

Plaintiff is a female of Asian-Indian national origin. (Pl. 56.1 Stmt. ¶ 2.) Plaintiff began working for Defendant on December 21, 1987 as a Licensed Practical Nurse at Harlem Hospital. (Id. ¶ 3.) Plaintiff voluntarily transferred to Elmhurst Hospital on March 6, 1989. (Id.)

_____

[2] The following facts are drawn from Plaintiff's 56.1 Statement. Except when indicated, the facts are not in dispute.

9

On December 9, 1991, while still at Elmhurst, Plaintiff became a Staff Nurse. (Id.)  In 1992, Plaintiff returned to Harlem Hospital where she continued to work until she was terminated on April 7, 2006. (Id. ¶¶ 3, 99.)

Plaintiff states that the alleged discrimination began in 1998 upon the arrival at the hospital of a group of nurses of Caribbean descent. (Plaintiff's Amended Complaint ("Complaint") ¶ 11; Pl. 56.1 Stmt. ¶ 12.)  According to the Complaint, the six years at Harlem Hospital prior to 1998 were "without incident." (Complaint ¶ 11.)  Despite this statement, Plaintiff nonetheless makes several accusations in her testimony of discrimination involving incidents prior to 1998.

B.   Alleged Disparate Treatment and Disciplinary
     History

After transferring back to Harlem Hospital in 1992, Plaintiff was subject to a Probationary Performance Evaluation covering the period of June 8, 1992 to September 8, 1992. (Pl. 56.1 Stmt. ¶ 14; Kaur Dep. 15:20-21:18.) Plaintiff received an overall "marginal" rating, indicating that Plaintiff's "performance inconsistently demonstrates basic skills and knowledge for safe patient care delivery and nursing practice." (Pl. 56.1 Stmt. ¶ 14.)  Plaintiff disputes that this evaluation was an accurate reflection of

10

her job performance and asserted at the time of the
evaluation that "it is personal." (Id.)  In October 1993,
Plaintiff received an "Action Plan for Improvement,"
stating that Plaintiff was not performing satisfactorily in
the areas of tardiness and interpersonal relationships.
(Id. ¶ 38.)  In three subsequent annual performance
evaluations covering the period June 1992 to June 1995,
Plaintiff received an overall "marginal" rating each year.
(Id. ¶¶ 18, 20, 22; Kaur Dep. 21:19-24:22, 27:23-32:25,
34:25-38:8.)  In  the annual performance evaluation
covering the period June 1995 to June 1996, Plaintiff
received an overall "satisfactory" rating. (Pl. 56.1 Stmt
¶ 23.)  In the performance evaluation covering the period
June 1997 to June 1998, Plaintiff again received a
"marginal" rating. (Id. ¶ 24; Kaur Dep. 48:24-50:24.)

     Four of these performance evaluations were prepared by
Head Nurse M.L. Rivera. (Pl. 56.1 Stmt. ¶¶ 14, 18, 20-24.)
Plaintiff asserts that Ms. Rivera gave her four "marginal"
evaluations in a row on the basis of racial bias, not poor
performance, because Ms. Rivera is Filipino and Plaintiff
is Indian. (Id. ¶ 25; Kaur Dep. 57:7-60:18.)  Plaintiff
offers no other evidence in this regard.

     Plaintiff's primary allegations of discrimination are
targeted at three supervisors: June Bobcombe, Edythe

Stoddard, and Carla Fagbeyiro. (Complaint ¶ 14-18, 24-28, 33; Kaur Decl. ¶ 12-15.) Ms. Bobcombe was Plaintiff's second level supervisor for at least ten years. (Pl. 56.1 Stmt. ¶ 4.) Ms. Stoddard, in the position of Head Nurse, last supervised Plaintiff in 1998 for approximately one year. (Id. ¶¶ 7, 9.) Ms. Fagbeyiro, a Nurse Manager, supervised Plaintiff from 2004 until her suspension in March 2006. (Id. ¶¶ 33-34.)

Ms. Stoddard became Plaintiff's supervisor in May 1998 when Plaintiff was demoted to the medical floor. (Kaur Decl. ¶ 14.) Ms. Stoddard testified that Plaintiff's work performance while under her supervision was deficient. (Pl. 56.1 Stmt. ¶ 10.) She specifically testified that Plaintiff's interpersonal relationships and ability to complete assignments were below standard. (Id.) Ms. Stoddard suspended Plaintiff in June 1998 for "purportedly not doing [her] job correctly." (Kaur Decl. ¶ 14.) A performance evaluation prepared by Ms. Stoddard, covering the period June 8, 1998 to June 8, 1999, gave Plaintiff an overall rating of "marginal." (Pl. 56.1 Stmt. ¶ 26.) Plaintiff in turn alleges that the negative performance evaluations prepared by Ms. Stoddard are "reflective of Defendant's pattern of discrimination, failure to provide

orientation, and lack of support for plaintiff." (Id.
¶ 10.)

Plaintiff received several performance evaluations in
the following years which were not prepared by Ms.
Stoddard.  In the evaluation covering June 1999 to June
2000, P. Cash-Smith, Assistant Head Nurse, gave Plaintiff
an overall "marginal" rating, again noting Plaintiff's
deficient interpersonal skills and inability to complete
assignments.  (Id. ¶ 27.)  In the evaluation covering
December 2001 to December 2002, Nadia Miller, Associate
Director, did not give an overall rating but noted
Plaintiff's problems in interpersonal relationships and
punctuality.  (Id. ¶ 29.)  For the period June 2003 to
December 2003, Naomi Griffin, Director of Special Projects,
gave Plaintiff two separate overall ratings of
"satisfactory."  (Id. ¶ 30.)  Plaintiff alleges that the
negative portions of these evaluations were given because
Ms. Griffin and Ms. Miller "never liked" Plaintiff,
presumably due to her national origin. (Kaur Dep. 101:4-
17.)

Ms. Bobcombe gave Plaintiff an overall rating of
"satisfactory" for the period December 2003 to December
2004. (Pl. 56.1 Stmt. ¶ 32.)  Plaintiff received two
consecutive ratings of "marginal" from Ms. Fagbeyiro for

13

the period covering December 2004 through March 2006. (Id.
¶¶ 33-34.) Ms. Fagbeyiro then gave Plaintiff two
consecutive ratings of "unsatisfactory" for the time period
March 2006 to December 2006. (Id. ¶¶ 36-37.)

In addition to these performance reviews, Plaintiff
was issued a variety of Employee Warning Notices and Action
Plans for Improvement throughout her tenure. (Id. ¶¶ 38-
53.) She was given several counseling sessions in
connection with these Action Plans. (Id.) Additionally,
co-workers, patients and supervisors filed various
complaints against Plaintiff throughout her tenure at the
hospital for her alleged misconduct. (Id. ¶¶ 55-96.)

These complaints concerned a variety of behavior,
including: unprofessional conduct, aggressive language,
rudeness, insubordination, failure to perform assigned
duties, failure to adhere to the hospital dress code, and
lack of punctuality. (Id. ¶ 92.) Plaintiff alleges that
the complaints filed by her supervisors, Ms. Stoddard, Ms.
Bobcombe, and Ms. Fagbeyiro, were motivated by
discriminatory animus and in retaliation for Plaintiff's
complaints regarding discrimination and derogatory
comments. (Kaur Decl. ¶ 9.) Plaintiff further alleges that
patients were encouraged by Ms. Stoddard to file false

14

complaints against her. (Kaur Decl. ¶ 18; Kaur Dep. 80:15-82:2.)

### C.    Plaintiff's Termination

Defendant utilizes a system of "progressive discipline." (Pl. 56.1 Stmt. ¶ 5.)  This sytem requires that when an employee has a performance problem, the employee is spoken to, then counseled, then warned, and then referred to human resources for disciplinary charges if improvement is not made. (Id.)  Ms. Bobcombe utilized this system with Plaintiff and ultimately referred Plaintiff to human resources for disciplinary charges. (Id. ¶ 54.)

In March 2006, Ms. Bobcombe filed a complaint with Cheryl A. Merritt, Personnel Director, notifying her of Plaintiff's performance problems from 1998 to 2006, including: lack of respect, verbal alterations, loud outbursts, insubordination, disruptive behavior, and falsification of time sheets. (Id. ¶ 91.)

On March 29, 2006, Plaintiff had a confrontation with Ms. Fagbeyiro in Ms. Fagbeyiro's office regarding Plaintiff's timesheets. (Id. ¶ 97.)  The details of this altercation are disputed, but Hospital Police were called, and both parties submitted written statements to the police. (Id.)

15

On April 6, 2006, Plaintiff was involved in an incident with a co-worker and the Clinical Director of Nursing, Dr. Flemister. (Id. ¶ 98; Kaur Dep. 7:25-8:18.) While Plaintiff was working in the clinic with Dr. Flemister, Plaintiff and another co-worker had a dispute over the use of a computer. (Pl. 56.1 Stmt. ¶ 98; Kaur Dep. 8:5-18, 114:22-115:25.) As a result of the incident, Dr. Flemister sent Plaintiff home. (Pl. 56.1 Stmt. ¶ 98.) Due to allegations of misconduct and insubordination surrounding the incident on April 6, 2006, Plaintiff was relieved of duty without pay pending an investigation. (Id. ¶ 99.) Disciplinary charges were subsequently instituted against Plaintiff for time and leave issues, inappropriate behavior, and insubordination. (Id. ¶ 101; Bobcombe Dep. 43:2-6.)

On June 26, 2006, a Step IA disciplinary conference was held concerning the disciplinary charges against Plaintiff. (Pl. 56.1 Stmt. ¶ 102.) Based on the evidence presented, Plaintiff was found guilty, and the Conference Officer recommended that Plaintiff be separated from her employment. (Id.) On October 18, 2006, a Step II Informal Conference was held regarding the disciplinary charges and the recommendation of the Step IA Conference Officer. (Id. ¶ 104.) After reviewing the evidence, the Review Officer

determined that the evidence was adequate to justify the
penalty of termination of Plaintiff's employment. (Id.
¶ 105.)

D.   Alleged Hostile Work Environment

Plaintiff alleges that she was subjected to a hostile
work environment beginning in 1998 until her termination in
2006. (Complaint ¶¶ 4, 11.)  Plaintiff was allegedly
subjected to verbal harassment by her supervisors, Ms.
Stoddard, Ms. Bobcombe, and Ms. Fagbeyiro. (Id. ¶ 12; Kaur
Dep. 93:3-13.)  Ms. Stoddard allegedly told Plaintiff that
"[w]e don't want foreigners here.  This is Harlem, a black
community.  We don't like foreigners." (Complaint ¶ 18.)
Ms. Stoddard allegedly also told Plaintiff that she
complained too much about her treatment and "encourage[d]
patients to hit [Plaintiff] and give [her] bad feedback."
(Id.; Kaur Dep. 80:15-81:23.) Ms. Stoddard also told
Plaintiff that she did not require any more training. (Kaur
Dep. 92:10-17.)  Plaintiff alleges that Ms. Stoddard's
refusal to provide her with more training was
discriminatory. (Id.)

Ms. Bobcombe allegedly told Plaintiff, "I know where
you are from" and "[y]ou eat shit and holy cow" and made
references to Plaintiff being Punjabi. (Pl. 56.1 Stmt.
¶ 15.)  Ms. Bobcombe also told other nurses to "keep an eye

17

on [Plaintiff]" and that Plantiff "can't be trusted." (Id. ¶ 13.) Ms. Blake, a co-worker, allegedly made "numerous" derogatory comments sometime between 2004 and 2006. (Id. ¶ 16.) Ms. Blake allegedly told Plaintiff that Indians "sell [their] daughters," "eat cows," and "never tell the truth and lie." (Id. ¶ 17.) Mr. Glenn, another co-worker, allegedly told Plaintiff that he "doesn't like to work with Indians" and that he thought Plaintiff was dangerous and belonged to the Taliban. (Id. ¶ 20-21.) In her declaration, Plaintiff mentions other derogatory comments that were made to her, but she does not attribute them to any specific person or identify when they were made. (Kaur Decl. ¶ 8.)

Plaintiff claims that the lock to her personal locker was cut on three occasions and her food was thrown out because her co-workers claimed that "it smelled bad." (Id. ¶ 22-23; Kaur Dep. 75:5-76:7, 147:8-10.) This occurred once between 1992 and 1998, once around 2000, and once in 2006. (Kaur Dep. 147:11-20.) Plaintiff does not know who cut her lock. (Id. 147:21-22.) Plaintiff was also allegedly denied medical treatment when she fell ill in the hospital in 1994, and her family was removed by police when they came to see her. (Kaur Decl. ¶ 11.)

18

Carla Fagbeyiro became Plaintiff's supervisor sometime around 2004. (Kaur Dep. 93:3-13.) Plaintiff claims that Ms. Fagbeyiro discriminated against Plaintiff by refusing to train her and by telling her, "[you] are Indian and you are very smart and you don't need any orientation." (Id. 93:15-19.) Ms. Fagbeyiro also moved Plaintiff to various different departments. (Id.)

Lastly, Plaintiff makes various allegations regarding time and leave issues. She claims that she was denied access to her timesheets. (Kaur Decl. ¶ 25.) She also claims that she was consistently denied vacation time. (Kaur Dep. 151:4-152:24.) She was also not allowed leave when her relatives passed away in 1994, 1995, and 2000. (Id. 147:23-149:2.) Plaintiff also alleges that she was marked absent from work when she was, in fact, present. (Id. 152:25-153:7.) She claims that Ms. Bobcombe, Ms. Stoddard, Ms. Fagbeyiro, and "Ms. Tutu" all improperly marked her absent sometime between 1998 and 2006. (Id. 153:10-154:19.) Plaintiff also alleges that her timesheets were falsified by Ms. Fagbeyiro and Ms. Bobcombe. (Id. 162:7-163:7.) However, Plaintiff admits that she has no basis for her belief that Ms. Fagbeyiro and Ms. Bobcombe falsified her timesheets. (Id. 172:20-25.)

19

E.   Alleged Retaliation

Plaintiff alleges that the various acts of discrimination that she experienced, in addition to being motivated by her national origin, were conducted in retaliation for her raising her rights under anti-discrimination laws. (Complaint ¶ 35; Pl. 56.1 Stmt. ¶ 107.)  Plaintiff specifically alleges that the following acts were conducted in retaliation for filing a complaint with the New York State Division of Human Rights ("NYSDHR") in 2003 regarding disability discrimination: she was assigned to work in different areas of the hospital; she was not given breaks; her time was not credited properly; she was not given vacation time; she was not given proper amounts of supplies; she was not being given certain keys; and patients were told to hit her and tell her that she smells. (Pl. 56.1 Stmt. ¶ 107.)

Plaintiff also alleges that her ultimate termination in 2007 was in retaliation for her 2003 NYSDHR complaint and other "numerous writen and verbal complaints" of discriminatory behavior. (Kaur Decl. ¶ 24.)  Aside from the 2003 NYSDHR complaint, Plaintiff offers several complaints written by Plaintiff to various supervisors. (Plaintiff's Exhibit D.)  Significantly, none of these complaints mentions discrimination on the basis of national origin.

(Id.) The complaints do reflect the fact that Plaintiff felt she was being treated unfairly by supervisors, but they are silent on the alleged motive behind that treatment. (Id.)

F. Prior Litigation

On January 14, 2003, Plaintiff filed her complaint with NYSDHR alleging disability discrimination. (Id. ¶ 114.) Plaintiff was terminated on May 13, 2003 while she was on Worker's Compensation leave due to Defendant's mistaken belief that she was absent without leave. (Id. ¶ 115.) This mistaken belief was fostered in part by Plaintiff's failure to submit documentation concerning her Worker's Compensation leave in a timely manner. (Id.) Plaintiff was reinstated to work on June 18, 2003, and received retroactive pay for the five-week period after the mistake was revealed. (Id. ¶ 116.)

Following an investigation, NYSDHR issued a determination in which it found no probable cause to find that Defendant had discriminated against Plaintiff. (Id.) The NYSDHR decision was issued on July 28, 2005. (Id.) On November 2, 2005, The United States Equal Employment Opportunity Commission ("EEOC") issued a Right to Sue Letter. (Id.) Plaintiff apparently took no action in response to this letter.

21

Plaintiff filed another complaint with NYSDHR on May 8, 2006 against Ms. Fagbeyiro and Ms. Bobcombe for subjecting Plaintiff to disparate treatment based on her age, race, national origin, and her filing of a prior complaint with NYSDHR. (Id. ¶ 116.) On May 16, 2006, Plaintiff also filed a complaint with EEOC alleging age and national origin discrimination, and retaliation. (Id. ¶ 117.)

Following an investigation of the claim filed on May 8, 2006, NYSDHR determined that there was no probable cause to believe that Defendant unlawfully discriminated against Plaintiff. (Id. ¶ 119.)

On March 29, 2007, the EEOC adopted the findings of NYSDHR's investigation of the 2006 complaint and mailed Plaintiff a right to sue letter. (Id. ¶ 121.) This action followed.

## II. JURISDICTION

This Court has jurisdiction over claims under Title VII pursuant to 28 U.S.C. § 1331 (2006).[3]

---

[3] Because Plaintiff received a "Notice of Rights" letter from the EEOC (see Pl. 56.1 Stmt. ¶ 121), Plaintiff is not jurisdictionally barred from bringing her Title VII claims. See 42 U.S.C. §§ 2000e-5(1) and (f)(1); Sheehan v. Purolator Courier Corp., 676 F.2d 877, 887 (2d Cir. 1981) ("[I]t is undisputed that a right to sue letter is a jurisdictional prerequisite to a suit seeking adjudication of the merits of a Title VII claim.").

III. DISCUSSION

A.   Legal Standard for Summary Judgment

As this is a motion for summary judgment, Defendant will prevail only "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [Defendant is] entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non[-]moving party.' A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.'" Overton v. New York State Div. of Military and Naval Affairs, 373 F.3d 83, 89 (2d Cir. 2004) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In assessing whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to the non-moving party. Lucente v. IBM Corp., 310 F.3d 243, 253 (2d Cir. 2002).

B.   Timeliness of Title VII Claims

The time period for bringing a claim under Title VII varies according to whether the individual files his charge directly with EEOC, or with a state or local agency.

Almasmary v. City of N.Y., No. 07-CV-1868 (SLT)(JMA), 2009
WL 914693, at *4 (E.D.N.Y. Mar. 31, 2009).  If an
individual chooses initially to file with a state or local
agency, he or she "must file a charge with the EEOC within
300 days 'after the alleged unlawful employment practice
occurred,' or within 30 days after receiving notice that
the state or local agency has terminated the proceeding,
whichever is earlier." Id. (quoting 42 U.S.C. § 2000e-
5(e)(1)); see also Nat'l R.R. Passenger Corp. v. Morgan,
536 U.S. 101, 119-20 (2002) (same).  Therefore, Title VII
requires that Plaintiff's claim have been filed with the
EEOC within three hundred days of the alleged
discriminatory act. Id.; 42 U.S.C. § 2000e-5(e)(1); 29
U.S.C. § 626(d)(1)(B).  However, under the continuing
violation exception to the Title VII limitations period, if
a plaintiff files an EEOC complaint that is timely with
respect to any incident of discrimination in furtherance of
an ongoing discriminatory policy, all claims regarding
conduct under that policy will be considered timely.
Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir. 1993).
Therefore, "[a] claim of hostile work environment is timely
so long as one act contributing to the claim occurred
within the statutory period; if it did, 'the entire time
period of the hostile environment may be considered by a

24

court for the purposes of determining liability.'"

Patterson v. County of Oneida, N.Y., 375 F.3d 206, 220 (2d
Cir. 2004) (quoting Morgan, 536 U.S. at 117).

Nonetheless, Title VII "'precludes recovery for
discrete acts of discrimination or retaliation that occur
outside the statutory time period,' even if other acts of
discrimination occurred within the statutory time period."
Id. (quoting Morgan, 536 U.S. at 105).  Therefore, the
occurrence of a discreet act within the statutory period
does not "pull in [a] time-barred discriminatory act."
Morgan, 536 U.S. at 113.  "'Mere continuity of employment,
without more, is insufficient to prolong the life of a
cause of action for employment discrimination.'" Id. at
112-13 (quoting Delaware State Coll. v. Ricks, 449 U.S.
250, 257 (1980)).  In sum, "discrete discriminatory acts
are not actionable if time barred, even when they are
related to acts alleged in timely filed charges." Id. at
113.

Plaintiff's discrimination charge was filed with
NYSDHR on May 8, 2006. (Pl. 56.1 Stmt. ¶ 116.)  Therefore,
Plaintiff's claims based on discreet discriminatory acts

that occurred before July 12, 2005 are time-barred,[4] and
Defendant is entitled to summary judgment on those claims.
However, the continuing violation doctrine may permit
consideration of acts contributing to a hostile work
environment that occurred before that date.

    C.    <u>Plaintiff's Title VII Claims</u>

        1.    <u>Disparate Treatment</u>

Title VII proscribes employer "discriminat[ion]
against any individual with respect to his compensation,
terms, conditions, or privileges of employment, because of
such individual's race, color, religion, sex, or national
origin." 42 U.S.C. § 2000e-2(a)(1) (2006).  "To withstand a
motion for summary judgment, a discrimination plaintiff
must withstand [a] three-part burden-shifting [analysis]
. . . ." <u>McPherson</u>, 457 F.3d at 215 (citing <u>McDonnell
Douglas Corp. v. Green</u>, 411 U.S. 792 (1973)).  "First, the
plaintiff must establish a <u>prima</u> <u>facie</u> case." <u>Jute v.
Hamilton Sundstrand Corp.</u>, 420 F.3d 166, 173 (2d Cir.
2005).  To do so, Plaintiff "must show that: 1) [s]he
belonged to a protected class; 2) [s]he was qualified for
the position; 3) [s]he suffered an adverse employment
action; and 4) the adverse employment action occurred under

---

[4] The relevant date offerd by Plaintiff in her memorandum of
law ("Pl. Memo") filed in opposition to this motion for
summary judgment is incorrect.

circumstances giving rise to an inference of discriminatory intent." Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003).

"A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." Galabya v. N.Y. City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000). In order to qualify as adverse, the action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." Id.  Examples of such an action include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." Terry, 336 F.3d at 138 (internal quotation marks omitted).  Absent direct evidence of discrimination, in order to demonstrate that she was treated differently due to her national origin, Plaintiff "'must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.'" Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003).  "Generally speaking, a plaintiff's burden of establishing a prima facie case in the context of employment discrimination is minimal." Collins v. N.Y. City

Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002) (internal
quotation marks omitted).

"[O]nce a plaintiff has established a prima facie
case, the burden shifts to the defendant, which is required
to offer a legitimate, non-discriminatory rationale for its
actions." Terry, 336 F.3d at 138 (citing McDonnell Douglas
Corp., 411 U.S. at 802).  Once the defendant offers such a
non-discriminatory rationale, "the plaintiff must 'prove
that the legitimate reasons offered by the defendant were
not its true reasons, but were a pretext for
discrimination.'" Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76
(2d Cir. 2005) (quoting Roge v. NYP Holdings, Inc., 257
F.3d 164 (2d Cir. 2001) (internal quotation marks
omitted)).  Therefore, in order to withstand summary
judgment, "'the plaintiff's admissible evidence must show
circumstances that would be sufficient to permit a rational
finder of fact to infer that the defendant's employment
decision was more likely than not based in whole or in part
on discrimination.'" Terry, 336 F.3d at 138 (quoting Stern
v. Trustees of Columbia Univ. in City of N.Y., 131 F.3d
305, 312 (2d Cir. 1997).  "In this, as in other, areas of
the law a case may be built entirely out of circumstantial
evidence." Norton v. Sam's Club, 145 F.3d 114, 119 (2d Cir.
1998).

i.    Plaintiff Has Failed to State a Prima

Facie Case of Disparate Treatment

Plaintiff has failed to state a prima facie case that she was discriminated against on the basis of her national origin.  The majority of Plaintiff's allegations are either time-barred or do not qualify as adverse employment actions.  Plaintiff's alleged demotion occurred in 1998 and is, therefore, time-barred. (Kaur Decl. ¶ 14.)  Likewise, Plaintiff's termination in 2003 occurred prior to the relevant time period. (Pl. 56.1 Stmt. ¶ 115.)  Regardless, Plaintiff has not submitted any evidence that the alleged demotion resulted in any change in pay or benefits, and Plaintiff was reinstated and compensated for lost wages after the 2003 termination.

The variety of negative performance evaluations and complaints received by Plaintiff also do not qualify as adverse employment actions.  In the disparate treatment context, a negative performance evaluation only qualifies as an adverse employment action if there are accompanying adverse consequences affecting the terms of employment. See, e.g., Boyd v. Presbyterian Hosp., 160 F. Supp. 2d 522, 537 (S.D.N.Y. 2001) ("Negative evaluations alone, without any accompanying adverse consequences are not adverse employment actions.") (internal quotation marks omitted);

Alywahby v. Shinseki, No. 01-CV-6512(NGG)(LB), 2009 WL 5166271, at *6 (E.D.N.Y. Dec. 29, 2009) (holding that a satisfactory rating, without any negative consequences resulting from the evaluation, does not qualify as an adverse employment action); but cf. Hicks v. Baines, No. 06-3782-cv, 2010 WL 346710, at *9 (S.D.N.Y. Feb. 02, 2010) (noting that in the retaliation context, negative evaluations, even without accompanying adverse consequences, may be actionable if they would deter a similarly situated individual from exercising her rights).

Likewise, frequently moving Plaintiff to different departments throughout the hospital was not materially adverse, as there is no evidence that her pay, benefits, or responsibilities were changed. (Kaur Dep. 93:15-19.) Plaintiff also has not proffered evidence tending to show that her supervisors' decisions not to provide her with additional training materially altered the terms or conditions of her employment. (Id.)

In regard to the various allegations relating to time and leave, denial of vacation time and alteration of Plaintiff's lunch schedule, taken alone, do not rise to the level of an adverse employment action. See, e.g., Figueroa v. N.Y. Health and Hosps. Corp., 500 F. Supp. 2d 224, 229-31 (S.D.N.Y. 2007) (holding that denial of medical leave

30

and denial of plaintiff's choice of vacation time did not constitute an adverse employment action). It should also be noted that there is no authority for the proposition that this Court should consider the cumulative effect of individually alleged adverse employment actions when evaluating Plaintiff's discrimination claim. Id.; Hill v. Rayboy-Brauestein, 467 F. Supp. 2d 336, 356 n.22 (S.D.N.Y. 2006) (noting that the court is not aware of any authority "that supports the proposition that the Court can consider the cumulative effect of non-adverse employment actions when evaluating an intentional discrimination claim"). The denial of leave when her relatives passed away in 1994, 1995 and 2000 is time-barred. (Kaur Dep. 147:23-149:2.) Plaintiff also admits that she was eventually given leave in 2000. (Id.)

The allegation that Plaintiff was improperly marked absent and that her timesheets were falsified may qualify as an adverse employment action. (Id. 152:25-154:19.) However, Plaintiff has offered no evidence, aside from her own testimony, that her timesheets were, in fact, falsified. She also admits that she has no basis for her belief that Ms. Bobcombe or Ms. Fagbeyiro altered her timesheets. (Id. 172:20-25.)

31

Plaintiff's termination in 2006, therefore, is the only cognizable adverse employment action remaining. However, Plaintiff has failed to demonstrate that she was terminated under circumstances giving rise to an inference of discriminatory intent.  Plaintiff's supervisors at the time of her termination were Ms. Bobcombe and Ms. Fagbeyiro.  Ms. Bobcombe allegedly discriminated against Plaintiff from 1998 until 2006. (Kaur Dep. 94:11-19.) However, the only clear instance of alleged discrimination that Plaintiff identifies on behalf of Ms. Bobcombe is one derogatory statement about Plaintiff's national origin. (Id. 94:23-95:12.)  In order to determine the probative value of a derogatory remark, this Court must consider: (1) who made the remark, (2) when the remark was made in relation to the employment decision at issue, (3) the content of the remark, and (4) the context in which the remark was made. Witkowich v. Gonzales, 541 F. Supp. 2d 572, 585 (S.D.N.Y. 2008).  Plaintiff fails to specify when this incident allegedly occurred. (Kaur Dep. 94:23-95:12.) The time when the remark was made is relevant to the determination of its significance. See Tomassi v. Insignia Fin. Group, Inc., 478 F.3d 111, 115 (2d Cir. 2007) ("[T]he more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the

32

action was motivated by discrimination."). This comment, made at an undetermined time, sometime between 1998 and 2006, cannot form the basis for an inference that Plaintiff was ultimately terminated due to discriminatory animus. See id. ("The more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be.").

Similarly, Plaintiff only attributes one discriminatory comment to Ms. Fagbeyiro. (Kaur Dep. 93:15-19.) The time that this comment was made is also not identified, but it allegedly occurred sometime after 2003 or 2004. (Id. 93:3-13.) Regardless of the time period, however, the statement cannot form the basis of an inference of discrimination because its relation to Plaintiff's termination is too "oblique." See Tomassi, 478 F.3d at 115. Although Ms. Fagbeyiro's statement reveals that she held particular assumptions or attitudes about individuals of Asian-Indian origin, this attitude was that such individuals are smart and do not require additional training. (Kaur Dep. 93:15-19.) There is no reason to think that this assumption about Plaintiff's national origin motivated Ms. Fagbeyiro in her involvement, if there was any, in Plaintiff's termination. The statement is,

therefore, not probative of whether the decision to
terminate Plaintiff was motivated by discriminatory intent.
See Witkowich, 541 F. Supp. 2d at 585 (holding that only
remarks that tend to show "that the decision-maker was
motivated by assumptions or attitudes relating to the
protected class" are relevant) (internal quotation marks
omitted) (emphasis added).

Regardless, "the stray remarks of a decision-maker,
without more, cannot prove a claim of employment
discrimination." Abdu-Brisson v. Delta Air Lines, Inc., 239
F.3d 456, 468 (2d Cir. 2001). Only where decision-makers
"repeatedly make comments that draw a direct link between a
plaintiff's membership in a protected class and an adverse
employment action" can an inference of discriminatory
animus be drawn. Constantin v. N.Y. City Fire Dep't, No. 06
Civ. 04631(GBD)(THK), 2009 WL 3053851, at *15 (S.D.N.Y.
Sep. 22, 2009) (internal quotation marks omitted).

Additionally, beyond Ms. Bobcombe's decision to notify
the human resources department of Plaintiff's various
problems at work, Plaintiff has not offered any evidence
that either supervisor had any part in the decision to
terminate Plaintiff.  In fact, it appears from the record
that the ultimate decision to terminate Plaintiff was made
by other representatives of Defendant after a review of

34

Plaintiff's entire work history. (Pl. 56.1 Stmt. ¶ 91.)
Therefore, Plaintiff has offered no evidence that any of
the actors who demonstrated allegedly discriminatory animus
had any role in Defendant's decision to terminate
Plaintiff. See, e.g., Kolesnikow v. Hudson Valley Hosp.
Ctr., 622 F. Supp. 2d 98, 114-15 (S.D.N.Y. 2009) (holding
that derogatory comments have no relationship to the
allegedy discriminatory conduct, "because there is no
evidence that they were made close in time" to the
termination, or that they "were made or condoned by
. . . employee[s] involved in the decision to terminate"
the plaintiff); Gilmore v. Lancer Ins. Co., No. 08-CV-0628
(JFB)(WDW), 2010 WL 87587, at *10 (E.D.N.Y. Jan. 07, 2010)
(rejecting an inference of discrimination when a derogatory
comment was made by a supervisor a year prior to
plaintiff's termination, and when there was no evidence
that the supervisor played any role in the decision to fire
plaintiff).

Likewise, the various derogatory statements that
Plaintiff attributes to her co-workers do not give rise to
an inference of discrimination because there is no evidence
that these co-workers had any involvement in Plaintiff's
termination. See Tomassi, 478 F.3d at 115 ("[R]emarks made
by someone other than the person who made the decision

35

adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark."); Uribe v. Kellogg's Snacks/Keebler, Inc., No. 05 Civ. 2959(PGG), 2009 WL 1098369, at *5 n.7 (S.D.N.Y. Apr. 22, 2009) ("The question is not whether [an employee] expressed discriminatory animus, but whether . . . the manager who decided to terminate [Plaintiff's] employment, acted with discriminatory intent, and [an employee's] comments are not probative on that point."); Rose v. N.Y. City Bd. of Educ., 257 F.3d 156, 162 (2d Cir. 2001) (comparing "the stray remarks of a colleague" to "comments made directly to [plaintiff] on more than one occasion by her immediate supervisor, who had enormous influence in the decision-making process").

Absent direct evidence of discriminatory animus, Plaintiff must demonstrate that she was treated differently from similarly situated individuals. Plaintiff has failed to offer any such evidence.

ii. Plaintiff Has Failed to Rebut
Defendant's Non-discriminatory
Rationale for Her Treatment

Alternatively, presuming Plaintiff has stated a prima facie case of discrimination, Defendant has offered a

36

non-discriminatory reason for Plaintiff's termination, and
Plaintiff has failed to offer evidence from which the fact-
finder could conclude that the non-discriminatory reason is
mere pretext.

Defendant has offered a variety of records
demonstrating that it believed Plaintiff's work performance
to be unacceptable throughout her tenure. See supra Part
II.C.  Further, Defendant has shown that it believed
Plaintiff to be involved in two incidents of
insubordination, one involving Ms. Fagbeyiro and one
involving Dr. Flemister, immediately before her
termination. (Id. ¶¶ 97-98.)  Defendant has also offered
evidence that it believed Plaintiff to be persistently
tardy. (Id. ¶ 91.)  Plaintiff has alleged that her
performance evaluations are not an accurate reflection of
her performance and that her timesheets were falsified.
However, she has offered no supporting evidence, and her
conclusory allegations are not sufficient to create a
material issue of fact. Hicks, 2010 WL 346710, at *5 ("'[A]
party may not rely on mere speculation or conjecture as to
the true nature of the facts to overcome a motion for
summary judgment . . . .  [M]ere conclusory allegations or
denials . . . cannot by themselves create a genuine issue
of material fact where none would otherwise exist.'"

37

(quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995) (alterations in original)).

For the foregoing reasons, Defendant's motion for summary judgment on Plaintiff's disparate treatment claims is granted.

## 2.   Retaliation

Title VII also proscribes employer "discriminat[ion] against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (2006).  Like disparate treatment claims, "[r]etaliation claims under Title VII are evaluated under a three-step burden-shifting analysis. Jute, 420 F.3d at 173.  "A plaintiff raising a claim of retaliatory discharge has a . . . burden of initially establishing a prima facie case of retaliation." Collins, 305 F.3d at 118.  In order to establish such a prima facie case, Plaintiff "'must show that [she] was engaged in protected activity; that [Defendant] was aware of that activity; that [she] suffered adverse employment decisions; and that there was a causal connection between the protected activity and the adverse employment action.'" Id. (quoting Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988)).  It has since

been established that "Title VII's anti-discrimination and anti-retaliation provisions are not coterminous; anti-retaliation protection is broader." Hicks, 2010 WL 346710, at *4 (internal quotation marks omitted). In a retaliation case, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). The material adversity signifies that "it is important to separate significant from trivial harms. Title VII . . . does not set forth a 'general civility code for the American workplace.'" Id. (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)).

A causal connection between the protected activity and the adverse employment action can be proven "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Hicks, 2010 WL

346710, at *10 (quoting Gordon v. N.Y. City Bd. Of Educ., 232 F.3d 111, 117 (2d Cir. 2000))

If Plaintiff successfully establishes a prima facie case of retaliation, "[t]he defendant must then 'articulate a legitimate, non-retaliatory reason for the adverse employment action.' If so, 'the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action.'" Hicks, 2010 WL 346710, at *3 (quoting Jute, 420 F.3d at 173).

i.      Plaintiff Has Failed to State a Prima
        Facie Case of Retaliation

Plaintiff has failed to offer any direct evidence of a causal connection between her assertion of her rights under anti-discrimination laws and any action taken by Defendant. She has also failed to offer any indirect evidence of retaliation by demonstating close temporal proximity between protected activity and any adverse employment action.

"'Protected activity' includes opposition to a discriminatory employment practice." Hubbard v. Total Commc'ns, Inc., No. 08-5085-cv, 2009 WL 3154492, at *1 (2d Cir. Sep. 30, 2009). This includes both Plaintiff's complaint with NYSDHR and her informal grievances filed

against supervisors. See Hubbard, 2009 WL 3154492, at *2 (holding that an informal email complaint sent from employee to supervisor satisfied the protected activity requirement under Title VII). Plaintiff's informal complaints arguably do not qualify as protected activity because they do not allege discrimination on the basis of national origin. However, because the Court finds that Plaintiff's retaliation claim fails regardless, it need not address this issue.

Plaintiff filed her complaint with NYSDHR in 2003 alleging discrimination on the basis of her disability. (Pl. 56.1 Stmt. ¶ 107.) Plaintiff also filed informal complaints with supervisors in June 2005, November 2005, and March 2006. Plaintiff's suspension leading to her ultimate termination occurred in April 2006. (Id. ¶ 98.) Although Plaintiff's suspension is close in time to the last complaint, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87, 95 (2d Cir. 2001) (emphasis added). The adverse employment actions which Plaintiff complains of began in 1992, eleven years before she filed her NYSDHR complaint and thirteen

41

years before she filed an informal grievance.  Given the fact that Plaintiff's problems at work began long before she engaged in any protected activity, and without direct evidence of retaliatory animus on behalf of Defendant, mere proximity in time cannot give rise to an inference of retaliation. Id.; see also Chawki v. N.Y. City Bd. of Educ., 341 F. App'x 660, 661-62 (2d Cir. 2009) (holding that negative performance evaluations in years preceding protected activity precluded inference of retaliation from negative evaluation directly following protected activity); Cody v. County of Nassau, No. 08-5127-cv, 2009 WL 2958742, at *2 (2d Cir. Sep. 16, 2009) (holding adverse actions occurring five months and one year after engaging in protected activity did not give rise to an inference of retaliation); Shah v. N.Y. State Dep't of Civil Serv., 341 Fed. App'x 670, 673 (2d Cir. 2009) (holding adverse actions one and three years after protected activity did not give rise to inference of retaliation).

Because Plaintiff has proffered neither direct nor circumstantial evidence "sufficient to permit a rational finder of fact to infer a retaliatory motive," Jute, 420 F.3d at 173, she has failed to state a prima facie case of retaliation.

ii.   Plaintiff Has Failed to Rebut

Defendant's Non-retaliatory Reason for

Her Termination

As discussed in regard to Plaintiff's national origin
discrimination claim, supra Part III.1.ii., Defendant has
offered a non-retaliatory reason for Plaintiff's treatment.
Plaintiff has failed to demonstrate why Defendant's
proffered reason should be rejected as mere pretext.

Therefore, Defendant's motion for summary judgment on
Plaintiff's retaliation claims is granted.

3.   Hostile Work Environment

"In order to prevail on a hostile work environment
claim, a plaintiff must make two showings: (1) that 'the
harassment was sufficiently severe or pervasive to alter
the conditions of the victim's employment and create an
abusive working environment' and (2) that there is a
'specific basis for imputing the conduct creating the
hostile work environment to the employer.'" Duch v.
Jakubek, 588 F.3d 757, 762 (2d Cir. 2009) (quoting Feingold
v. N.Y., 366 F.3d 138, 149-50 (2d Cir. 2004)).  A hostile
work environment claim contains both an objective and
subjective component.  "[T]he misconduct shown must be
'severe or pervasive enough to create an objectively
hostile or abusive work environment,' and the victim must

43

also subjectively perceive that environment to be abusive.'" Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" Id. (quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997) (internal quotation marks omitted)). "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." Alfano, 294 F.3d at 374; see also Desir v. Concourse Rehabilitation & Nursing Ctr., No. 06 Civ. 1109(LAK), 2008 WL 756156, at *6 (S.D.N.Y. Mar. 21, 2008) ("Unless they are sufficiently severe to alter the terms and conditions of employment, isolated incidents usually do not rise to the level of a hostile work environment."). Therefore, Plaintiff "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of her working environment." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) (quoting Perry, 115 F.3d at 149). "To decide whether the threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." Alfano, 294

F.3d at 374; see also Harris, 510 U.S. at 23 (noting
relevant factors to a hostile work environment
determination to be "frequency of the discriminatory
conduct; its severity; whether it is physically threatening
or humiliating, or a mere offensive utterance; and whether
it unreasonably interferes with an employee's work
performance.")

In regard to the second requirement, that there be a
specific basis for imputing the offensive conduct to
Defendant, "'when the harassment is attributable to a
coworker, rather than a supervisor, . . . the employer will
be held liable only for its own negligence.'" Duch, 588
F.3d at 762. Therefore, to the extent that Plaintiff seeks
to impute the offensive conduct of Plaintiff's co-workers
to Defendant, Plaintiff must establish that Defendant
"'failed to provide a reasonable avenue for complaint' or
that 'it knew, or in the exercise of reasonable care should
have known, about the harassment yet failed to take
appropriate action.'" Id. (quoting Howley v. Town of
Stratford, 217 F.3d 141, 154 (2d Cir. 2000)).

> i.   Plaintiff Has Failed to Establish a Case of
>      Hostile Work Environment

Plaintiff has failed to establish the occurrence of
any incidents that were "severe or pervasive" enough to

create an objectively hostile work environment. Alfano, 294 F.3d at 374 (quoting Harris, 510 U.S. at 21). In evaluating Plaintiff's claim, it must be noted that she worked for Defendant since 1987. (Kaur Dep. 11:20-12:9.) Over the course of her employment, Plaintiff identifies two derogatory comments made by her supervisors, one made by Ms. Bobcombe and one made by Ms. Stoddard. (Pl. 56.1 Stmt. ¶¶ 13, 15, 18.) Another comment attributed to Ms. Bobcombe, to "keep an eye on" Plaintiff because she cannot be trusted, (Id. ¶ 13.), is ambiguous and could be referring to Plaintiff's perceived problems completing assignments effectively. Likewise, Ms. Stoddard's comment that Indians "are very smart" when explaining to Plaintiff why she did not require more orientation is ambiguous. (Kaur Dep. 93:15-16.) The two obviously racist comments, though deplorable, are not of sufficient severity to alter the terms and conditions of Plaintiff's employment. (Def. 56.1 Stmt. ¶¶ 15, 18.)

Likewise, the fact that Plaintiff's food was thrown out on four occasions over the course of fourteen years at the hospital does not create an objectively hostile work environment. (Id. ¶ 22-23; Kaur Dep. 75:5-76:7, 147:8-10.) The alteration of Plaintiff's timesheets, (Kaur Dep. 162:7-163:7.), if true, could contribute to a hostile work

environment because of the strong possibility that such conduct would interfere with Plaintiff's ability to do her job. However, Plaintiff admittedly cannot offer any evidence that her timesheets were altered, who may have altered them, or why they were falsified.

Beyond several isolated remarks, there is no reason to believe that the variety of conduct Plaintiff complains of was necessarily due to her national origin. The conduct Plaintiff complains of, even if motivated by discriminatory bias, "was too isolated, infrequent, and did not demonstrate unreasonable interference in her ability to work . . . . Thus, [Plaintiff] has failed to satisfy her burden of showing an objectively hostile work environment." Carter v. New Venture Gear, Inc., 310 F. App'x 454, 458 (2d Cir. 2009).

Furthermore, the derogatory statements attributed to Plaintiff's co-workers cannot salvage the hostile work environment claim because Plaintiff has offered no reason why her co-workers' discriminatory conduct should be imputed to Defendant. She has not demonstrated that Defendant was aware of the comments being made, or that there was not a reasonable grievance procedure in place for Plaintiff to follow. In fact, Plaintiff has submitted several letters that she wrote to various supervisors, and

none of them mentions any derogatory comments or discrimination on the basis of her national origin. (Pl. Exhibit D.)

Beyond isolated and episodic incidents, Plaintiff has "failed to present evidence that would permit a reasonable factfider to find that the workplace was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment." Smith v. New Venture Gear, Inc., 319 F. App'x 52, 56 (2d Cir. 2009). Therefore, Defendant's motion for summary judgment on Plaintiff's hostile work environment claim is granted.

D.    Plaintiff's State Law Claims

In addition to her Title VII claims, Plaintiff has alleged injuries under New York state law. District courts have discretion to exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a) & (c). In determining whether to exercise supplemental jurisdiction, this Court must "balance the traditional 'values of judicial economy, convenience, fairness, and comity' in deciding whether to extend jurisdiction."

48

Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).  When all federal claims have been dismissed before trial, these factors usually point toward dismissal of the state claims as well.  See Cohill, 484 U.S. at 350 n.7.  However, there is no "mandatory rule to be applied inflexibly in all cases." Id.  For instance, retention of jurisdiction is appropriate where the remaining state law issues are easily resolved.  See Waterman v. Transp. Workers' Union Local 100, 8 F. Supp. 2d 363, 369 n.2 (S.D.N.Y. 1998) (citing Brazinski v. Amoco Petroleum Additives Co., 6 F.3d 1176, 1182 (7th Cir. 1993). Here, Plaintiff's state law claims can "be determined without further trial proceedings and without entanglement with any difficult issues of state law, [so] considerations of judicial economy warrant[] retention and decision rather than relinquishment of the case to the state court." Brazinski, 6 F.3d at 1182.  On balance, then, the Cohill factors lead to this Court exercising supplemental jurisdiction.

"The state . . . law claims are subject to the same analysis as claims under Title VII, so they can be analyzed together." Martinez-Santiago v. Zurich N. Am. Ins. Co., No. 07 Civ. 8676(RJH), 2010 WL 184450, at *6 (S.D.N.Y. Jan. 20,

2010) (citing Weinstock v. Columbia Univ., 224 F.3d 33, 42 n.1 (2d Cir. 2000) ("[I]dentical standards apply to employment discrimination claims brought under Title VII . . . [and] New York Executive Law § 296 . . . ."); see also Desir, 2008 WL 756156, at *4 ("New York courts examine claims under [New York Executive Law § 296 . . .] with the same analytical lense as corresponding Title VII-based claims.") (citing Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007)); Tomka v. Seiler Corp., 66 F.3d 1295, 1305 n.4 (2d Cir. 1995); Song v. Ives Labs., Inc., 957 F.2d 1041, 1046 (2d Cir. 1992); Carmody v. City of N.Y., No. 05 Civ. 8084(HB), 2006 WL 3317026, at *17 (S.D.N.Y. Nov. 13, 2006)); Flores v. Buy Buy Baby, Inc., 118 F. Supp. 2d 425, 429-30 (S.D.N.Y. 2000).

Therefore, for the same reasons discussed in Part II.B., supra, Defendant's motion for summary judgment on Plaintiff's claims under New York state law is granted.

E.   Plaintiff's City Law Claims

For the same reasons mentioned in regard to Plaintiff's claims under state law, the Cohill factors lead the Court to exercise supplemental jurisdiction over Plaintiff's claims arising under the NYCHRL. See supra Part III.D.

"The Local Civil Rights Restoration Act of 2005
('Restoration Act'), N.Y.C. Local Law No. 85 (2005),
requires that claims brought under the NYCHRL be evaluated
separately from counterpart claims brought under Title VII
. . . ." Kolenovic v. ABM Indus. Inc. No. 09-0601-cv, 2010
WL 227660, at *1 (2d Cir. Jan. 21, 2010); see also Loeffler
v. Staten Island Univ. Hosp., 582 F.3d 268, 278(2d Cir.
2009) (acknowledging the legislative intent to "abolish
'parallelism' between the City HRL and federal and state
anti-discriminatoin law.")  The Restoration Act amended the
law to require that "'provisions of this title shall be
construed liberally for the accomplishment of the uniquely
broad and remedial purposes thereof, regardless of whether
federal or New York State civil and human rights laws
. . . have been so construed.'" Ochei v. Coler/Goldwater
Mem'l Hosp., 450 F. Supp.2d 275, 282 (S.D.N.Y. 2006)
(quoting N.Y.C. Admin. Code § 8-130); see also Jordan v.
Bates Adver. Holdings, Inc., 816 N.Y.S.2d 310, 317 (2006)
("[The] legislative history clearly contemplates that the
New York City Human Rights Law be liberally and
independently construed with the aim of making it the most
progressive in the nation.").

1.   <u>Disparate Treatment</u>

Under the NYCHRL, Plaintiff must establish "by a preponderance of the evidence that she has been treated less well than other employees" due to unlawful discrimination.  <u>Williams v. N.Y. City Housing Auth.</u>, 872 N.Y.S.2d 27, 39.  "None of the 2005 Restoration Act's amendments to the NYCHRL altered the standard by which a court should determine whether a discriminatory act has occurred . . . ." <u>Wilson v. N.Y.P. Holdings, Inc.</u>, No. 05 Civ. 10355(LTS)(DFE), 2009 WL 873206, at *29 (S.D.N.Y. Mar. 31, 2009).  As discussed in Part III.C.1., <u>supra</u>, Plaintiff offers insufficient evidence of actions or remarks made by decision-makers to support an inference that discriminatory animus motivated her treatment.  Plaintiff has also failed to identify any non-protected class employee who was treated differently.  Accordingly, no genuine issue of material fact exists as to Plaintiff's NYCHRL discrimination claim, and Defendant's motion for summary judgment is granted.

2.   <u>Retaliation</u>

In assessing retaliation claims, the NYCHRL requires the fact-finder to consider any conduct that is "reasonably likely to deter a person from engaging in protected activity." <u>Williams</u>, 872 N.Y.S.2d at 34.  As discussed in

Part III.C.2., supra, Plaintiff has failed to offer
evidence from which a reasonable fact-finder could conclude
that her treatment by Defendant was motivated by
retaliatory animus.  The Court's conclusion is not altered
by the more liberal construction of the NYCHRL because
Plaintiff has failed to link any action on behalf of
Defendant to a retaliatory motivation. See Williams, 872
N.Y.S.2d at 34-35.  Therefore, Defendant's motion for
summary judgment on Plaintiff's retaliation claim under New
York City law is granted.

### 3.   Hostile Work Environment

With regard to Plaintiff's hostile work environment
claim under the NYCHRL, it is error to evaluate this claim
under the "severe or pervasive" standard applicable to
Title VII hostile work environment claims. Kolenovic, 2010
WL 227660, at *1.  Rather, "questions of 'severity' and
'pervasiveness' are applicable to consideration of the
scope of permissible damages, but not to the question of
underlying liability." Williams, 872 N.Y.S.2d at 38;
Selmanovic v. NYSE Group, Inc., No. 06 Civ. 3046(DAB), 2007
WL 4563431, at *4 (S.D.N.Y. Dec. 21, 2007) (same).  While
the NYCHRL thus advocates a more liberal standard for
hostile work environment claims than Title VII, "the
broader purposes of the [NYCHRL] do not connote an

intention that the law operate as a general civility code."
Williams, 872 N.Y.S.2d at 40.   Therefore, "summary judgment
[is] still . . . available where [the defendant] can prove
that the alleged discriminatory conduct in question . . .
could only be reasonably interpreted by a trier of fact as
representing no more than petty slights or trivial
inconveniences." Id. at 41.

Having reviewed the evidence in light of the NYCHRL's
broad remedial purpose, and after shifting the burden to
Defendant, the Court finds that Defendant has offered
sufficient evidence that the conduct Plaintiff complains of
can only be interpreted reasonably as petty slights and
trivial inconveniences.   Accordingly, no genuine issue of
material fact exists and Defendant's motion for summary
judgment on Plaintiff's NYCHRL hostile work environment
claim is granted.

## Conclusion

For the foregoing reasons, Defendants' motion for
summary judgment [dkt. no. 26] is GRANTED, and Plaintiff's
complaint is dismissed in its entirety. The Clerk of Court
shall mark this action CLOSED and all pending motions
DENIED as moot.


SO ORDERED:

DATED:      New York, New York
            February ___, 2010


                            _____
                            LORETTA A. PRESKA, Chief U.S.D.J.

## Conclusion

For the foregoing reasons, Defendants' motion for
summary judgment [dkt. no. 26] is GRANTED, and Plaintiff's
complaint is dismissed in its entirety. The Clerk of Court
shall mark this action CLOSED and all pending motions
DENIED as moot.


SO ORDERED:

DATED:      New York, New York
            February ___, 2010


                            _____
                            LORETTA A. PRESKA, Chief U.S.D.J.